**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Miller Hardin & Holliday LLC, | No. CV-26-02907-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| E Bruce Brimacombe, et al., | |
| Defendants. | |

On May 29, 2026, the Court issued an order striking or otherwise disposing of a flood of procedurally improper filings that had been submitted by Plaintiff Miller Hardin & Holliday LLC ("MHH") and Defendant E Bruce Brimacombe ("Brimacombe").  (Doc. 34.)  The Court also ordered MHH to file a memorandum "explaining why [MHH] has standing to bring this action and showing cause why this action should not be dismissed for lack of subject-matter jurisdiction."  (*Id.*)

Since the issuance of that order, the chaotic filings by both sides have continued— MHH has filed a motion to compel (Doc. 36); Brimacombe has filed an emergency motion for a protective order that includes, as apparent attachments, additional ex parte requests for relief (Doc. 37); Brimacombe has filed a "supplement" to a motion that was denied in the May 29, 2026 order (Doc. 38) as well as a response to MHH's motion to compel (Doc. 39); MHH has filed a motion to amend its complaint (Doc. 40); MHH has filed a response to the order to show cause (Doc. 41); Brimacombe has filed a combined motion for sanctions and response to the motion to amend (Doc. 42), as well as a supporting affidavit

(Doc. 43); and MHH has filed a supplement to its response to the order to show cause (Doc. 44).

Having considered those filings, the Court concludes this action should be dismissed. The essential allegations—which are difficult to discern in light of each side's insistence on including, in case filings, unnecessary details and gratuitous attacks on the other side—are as follows. Brimacombe is the founder of a company called GOe3 Technologies ("GOe3"). (Doc. 1 ¶ 11.) In or around 2024, one of GOe3's business strategies was to apply for energy tax credit registration numbers. (*Id.* ¶ 26.) After GOe3's initial attempts to obtain those registration numbers were unsuccessful, Brimacombe "sought a referral from D.C. sources . . . for counsel competent to submit the request of energy tax credits registration numbers that Brimacombe was seeking, and Brimacombe was referred to MHH by common contacts." (*Id.* ¶ 36.) "MHH was engaged to represent GOe3 solely for the acquisition of various tax credits allegedly available under the Inflation Reduction Act, 26 USC §6418." (*Id.* ¶ 37.) During the representation, Brimacombe allegedly "made extensive misrepresentations" and MHH "became concerned that [Brimacombe] was using the services of MHH to perpetrate a fraud." (*Id.* ¶¶ 45-46.) MHH asserts that it is "in a precarious situation" because it "does not have enough information to conclusively prove that GOe3 has the right to the energy tax credits as requested by the IRS, but also does not have sufficient information to state the tax credit claims made by [Brimacombe] are a hoax and that GOe3 does not have a right to the credits." (*Id.* ¶ 47.) Based on these concerns, MHH began focusing "on the duty to protect the innocent investors, claimants and creditors of GOe3." (*Id.* ¶ 50.) Due to MHH's concern "that Brimacombe would fail to maintain custody of the sale of the tax credits in a manner that met his fiduciary duties," MHH "drafted an assignment agreement by which a portion of the proceeds from the sale of the energy tax credits would be transferred to [an] independent third party entity for the benefit of GOe3 members, claimants and creditors." (*Id.* ¶ 51.) In its complaint, MHH seeks declaratory relief "with regard to the parties' rights and interests related to the energy tax credits, and any collateral liability arising from the

unknown and dubious actions of [Brimacombe]." (*Id.* ¶ 61.)

In the May 29, 2026 order, the Court expressed skepticism that MHH possesses standing to pursue such declaratory relief, in part because "it is wholly unclear from the allegations in the complaint what rights and interests (if any) [MHH] has in Brimacombe's entities." (Doc. 34 at 6-7.) In response, MHH contends that it "was engaged by some Members of GOe3 and some Community Coin members to represent their interest and obtain a return of their funds entrusted to Brimacombe" and "represents the interests of" various members, "including Debrorah Gillaspy," "in pursuit of the tax credit registration numbers . . . on a breach of contract claim against Defendant Brimacombe" and that "the standing issue is much clearer" in light of those additional representations. (Doc. 41 at 5.) MHH also notes that it intends to assert additional claims against Brimacombe in a proposed amended complaint, including claims for defamation and breach of statutory duties. (*Id.*) MHH suggests the Court has federal-question jurisdiction over the claims in the complaint, noting that "[f]ederal question under 28 U.S.C. §1331 is applicable when the plaintiff's complaint 'arises under' federal law" and asserting that "Brimacombe sought and continues to seek investments from various parties governed by federal securities laws 15 USC §77, *et seq*, as well as various federal regulations such as Reg D, 17 C.F.R. § 230.500, *et seq*.," that "[t]he tax credits registration numbers MHH was engaged to acquire arise under federal law, 26 USC §6418," and that Brimacombe's answer references federal statutes. (*Id.* at 6.) MHH also states that the Court has diversity jurisdiction over the claims in the complaint because "[t]he Defendants are Arizona residents; none of the plaintiffs are Arizona residents," and the amount in controversy is "millions." (*Id.* at 6-7.) Finally, in its supplemental response, MHH emphasizes that its engagement agreement with GOe3 "included an attorney's fee provision in the event MHH sues GOe3 for fee and other collections" and argues that "MHH thus has standing to sue GOe3 by virtue of the terms of that engagement agreement." (Doc. 44 at 5.)

"[T]he requirement that a litigant have standing to invoke the authority of a federal court is an essential and unchanging part of the case-or-controversy requirement of Article

III." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (cleaned up). "[P]laintiffs, as the parties now asserting federal jurisdiction, . . . carry the burden of establishing their standing under Article III." *Id.* The Court's "obligation [is] to be sure that standing exists and to raise, sua sponte if need be, any deficiency." *San Francisco Drydock, Inc. v. Dalton*, 131 F.3d 776, 778 (9th Cir. 1997). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

MHH has failed to establish that it possesses standing to pursue any of the claims asserted in the complaint. The complaint seeks various forms of declaratory relief regarding the rights and obligations of GOe3's beneficiaries, claimants, creditors, and members. But MHH is simply a law firm that was retained by GOe3 to perform legal work related to the disputed energy tax credit registration numbers. Even assuming that the beneficiaries, claimants, creditors, and members of GOe3 might possess standing to pursue the sort of declaratory relief sought in the complaint,[1] it doesn't follow that MHH itself also has standing to pursue such relief. "[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial

---

[1] The Court is doubtful that it would have chosen to exercise jurisdiction over the claims for declaratory relief asserted in the complaint even if they had been asserted by a proper plaintiff with standing to pursue them. *See generally Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223-24 (9th Cir. 1998) (noting that the Declaratory Judgment Act is "deliberately cast in terms of permissive, rather than mandatory, authority," that the Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so," and that district courts may sua sponte decline to exercise jurisdiction over a claim for declaratory relief). But because jurisdiction is lacking for other reasons, it is unnecessary to engage in a detailed analysis of the relevant factors bearing on that inquiry.

powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). MHH lacks any such personal stake. Indeed, in its response to the May 29, 2026 order, MHH seems to acknowledge that certain third parties—and not MHH itself—were the ones allegedly injured by Brimacombe's challenged conduct. (Doc. 41 at 3 ["As a result of Brimacombe's nefarious conduct discovered as the representation of GOe3 proceeded, numerous injuries to various members GOe3 and claimants of GOe3 were discovered at the hand of Brimacombe."].)

Notwithstanding this, MHH contends it possesses standing because it was "engaged by some Members of GOe3 and some Community Coin members to represent their interest and obtain a return of their funds entrusted to Brimacombe" "on a breach of contract claim against Defendant Brimacombe." (Doc. 41 at 5.) But this misunderstands how standing works. "[S]tatus as . . . an attorney-in-fact for litigation purposes . . . does not confer . . . Article III standing to sue in a representative capacity on [a] client's behalf." *MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2011 WL 1457424, *2 (E.D. Cal. 2011) (cleaned up). "Ordinarily, a party must assert his own legal rights and cannot rest his claim to relief on the legal rights of third parties," although there is "an exception" where "the party asserting the right has a close relationship with the person who possesses the right and there is a hindrance to the possessor's ability to protect his own interests." *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (cleaned up). Even assuming an attorney-client relationship might qualify as a sufficiently "close relationship" to satisfy the first requirement, MHH has made no attempt to show the second requirement is satisfied here.

Nor does MHH possess standing by virtue of its engagement agreement with GOe3. According to MHH, the engagement agreement authorizes it to sue GOe3 for unpaid fees. But this is not a lawsuit by MHH against GOe3 for unpaid fees—instead, it is a lawsuit by MHH against Brimacombe in which MHH seeks declaratory relief regarding the rights of third parties.

Given these determinations, MHH's assertion that the Court would have both diversity jurisdiction and federal-question jurisdiction over the claims asserted in the

complaint is beside the point.  Putting aside various infirmities in that assertion, which for the sake of judicial efficiency the Court will not discuss, "[a] plaintiff must meet the constitutional requirements of Article III to have standing to sue in federal court, regardless of whether she is invoking diversity jurisdiction or federal question jurisdiction." *Lagrisola v. North American Fin. Corp.*, 2021 WL 4551938, *1 (S.D. Cal. 2021).  *See also Tobia v. Burlington Coat Factory of Texas Inc.*, 2018 WL 5023421, *3 (E.D. Cal. 2018) ("Under either federal question or diversity jurisdiction, however, a federal court lacks subject matter jurisdiction if a plaintiff lacks standing to bring his claims.").

The final matter to be addressed is MHH's motion to amend its complaint to add new factual allegations, claims, and parties.[2]  For several reasons, this motion does not change the outcome.  As an initial matter, the motion is procedurally deficient.  Under LRCiv 15.1(a), "[a] party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added."  *Id.*  MHH did not comply with that requirement here.

The proposed amended complaint is also deficient for other reasons.  To the extent the proposed amended complaint seeks to add new factual allegations in support of MHH's reasserted claims for declaratory relief that MHH also asserted in the original complaint, although "in determining constitutional standing, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing," *Maya*, 658

---

[2]     MHH's suggestion that it is simply requesting leave of court "out of deference" (Doc. 40 at 7-8) is incorrect.  Under Rule 15(a)(1), a party may amend its pleading once as a matter of course within 21 days of serving it or within 21 days after service of a responsive pleading.  Here, MHH filed its complaint on April 27, 2026 (Doc. 1) and Brimacombe filed an answer on May 23, 2026 (Doc. 25).  Thus, the 21-day window for amendment as a matter of course expired on Monday, June 15, 2026.  Fed. R. Civ. P. 6(a)(1)(C).  MHH filed its motion to amend on Wednesday, June 17, 2026.  Although MHH certified that it filed its motion on June 15, 2026 (Doc. 40 at 12), and perhaps intended to do so, the two-day lapse between the intended and actual filing date would take amendment as a matter of course off the table (if the decision to instead file a motion had not already rendered it a moot point).

F.3d at 1067, the problem remains that MHH itself lacks standing to seek declaratory relief for the benefit of GOe3's beneficiaries, claimants, creditors, and members.

Perhaps recognizing that it lacks standing to assert the claims that form the crux of both the original and proposed amended complaint, MHH seeks to add two new state-law tort claims that have only a tenuous relationship (at best) to the other claims: (1) a defamation claim based on Brimacombe's declaration, which allegedly contains "outrageous and wholly untrue claims" about William R. Miller, an attorney at MHH who is serving as MHH's counsel in this action; and (2) a tortious interference with contract and business relations claim that alleges, in a vague and conclusory fashion, that Brimacombe interfered with the "limited engagement representation agreement" MHH entered into with GOe3 in early 2026 "by impeding actions and access to necessary information." (Doc. 40-2 ¶¶ 263-96.)

The only possible jurisdictional basis for pursuing those state-law claims in this action—in the absence of a federal claim asserted by a party with standing to pursue that claim—would be diversity jurisdiction, but the proposed amended complaint does not properly allege the citizenship of either MHH or Brimacombe. As for MHH, the sole allegation is that MHH "is a Mississippi limited liability company operating as a law firm licensed to practice in numerous states." (*Id.* ¶ 1.) But to establish diversity jurisdiction "with respect to a limited liability company, the citizenship of all of the members must be pled." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 611 (9th Cir. 2016). The proposed amended complaint does not identify the members of MHH, let alone allege their citizenship. Turning to Brimacombe, the sole allegation is that he is "a resident of Maricopa County, Arizona." (Doc. 40-2 ¶ 6.) But "[i]t has long been settled that residence and citizenship [are] wholly different things within the meaning of the Constitution and the laws defining and regulating the jurisdiction of the . . . courts of the United States; and that a mere averment of residence in a particular state is not an averment of citizenship in that state for the purpose of jurisdiction." *Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905).[3]

---

[3]    To the extent the proposed amended complaint seeks to add two new plaintiffs, Deborah L. Gillaspy and Casper Holdings, LLC, and assert new state-law tort claims

MHH's failure to properly allege the parties' citizenship for diversity-jurisdiction purposes in the proposed amended complaint might be overcome if MHH were given another opportunity to submit an amended complaint for the Court's consideration, this time adhering to LRCiv 15.1(a) and including allegations that establish the parties' citizenship. *NewGen*, 840 F.3d at 612 ("Courts may permit parties to amend defective allegations of jurisdiction at any stage in the proceedings."). The Court will not afford MHH that opportunity, however, because the new state-law claims MHH seeks to inject into this action constitute a transparent attempt to conjure standing where it is otherwise lacking via claims that are patently frivolous. There is "an absolute privilege for defamatory statements made in a judicial proceeding, so long as such statements bear some relationship to the proceedings." *Drummond v. Stahl*, 618 P.2d 616, 620 (Ariz. Ct. App. 1980). Thus, putting aside whether a law firm like MHH would otherwise have standing to sue for defamation based on statements made about one of its attorneys, the absolute privilege for defamatory statements made in a judicial proceeding bars the defamation claim. As for the tortious interference claim, it is vague, conclusory, and an obvious attempt to conjure up standing where there is none. Brimacombe is the founder and manager of GOe3, and the contract at issue is a legal representation contract Brimacombe negotiated on GOe3's behalf. (Doc. 1 ¶¶ 36-37; Doc. 40-2 ¶¶ 5, 69-70.) A claim that Brimacombe interfered with the contract he entered into on behalf of his own business entity, apparently by acting as a difficult client, misapprehends the nature of a tortious interference claim. Moreover, there is no indication of how *MHH* (as opposed to GOe3) was injured by the supposed interference. The proposed amended complaint alleges that "MHH has suffered damage caused by the undue delay in completing acquisition of the tax credit registration numbers because of Brimacombe's recalcitrant failure to produce the

against Brimacombe on their behalf (Doc. 40-2 ¶¶ 3-4, 231-38), the allegations remain insufficient to establish the existence of diversity jurisdiction. Gillaspy is alleged to be a "resident" of both Virginia and Arizona (*id.* ¶ 3) and the amended complaint does not identify the members of Casper Holdings, LLC or allege their citizenship (*id.* ¶ 4). Additionally, the proposed new breach-of-contract claim asserted by Gillaspy is seemingly invalid on its face—it alleges that GOe3 breached the relevant contract (*id.* ¶ 236), but GOe3 is not named as a defendant.

documents he is obligated to produce in order to prove the compliance with the Tax Code and the objective right to the tax credits." (Doc. 40-2 ¶ 296.) But a delay in MHH's completion of the legal task Brimacombe hired MHH to complete on behalf of GOe3 is not an injury to MHH. Thus, even if this bizarre claim had merit—which it certainly does not—MHH would once again lack standing.

"Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018). Even if MHH were afforded the opportunity to set forth new allegations establishing diversity jurisdiction, the state-law claims—the only claims in which MHH could even arguably have standing—obviously fail on their merits, such that amendment would be futile.

Having concluded that MHH lacks standing, this case must be dismissed for lack of subject-matter jurisdiction. *Cf. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380-81 (9th Cir. 1988) ("In determining federal court jurisdiction, we look to the original, rather than to the amended, complaint. Subject matter jurisdiction must exist as of the time the action is commenced. . . . If jurisdiction was lacking, then the court's various orders, including that granting leave to amend the complaint, were nullities."); *Lidie v. State of Cal.*, 478 F.2d 552, 555 (9th Cir. 1973) ("Nor could the plaintiffs' 'Motion to Amend' have cured their problem. The motion was actually a motion to intervene by several additional plaintiffs. . . . [W]here the original plaintiffs were never qualified to represent the class, a motion to intervene represents a back-door attempt to begin the action anew, and need not be granted."); *Almeida v. Google, Inc.*, 2009 WL 3809808, *2 (N.D. Cal. 2009) ("[W]here the original named plaintiff lacks standing, a new plaintiff with standing cannot step in to save the lawsuit from dismissal.").

Finally, to tie up a few loose ends:

Brimacombe's motion to seal (Doc. 37) fails to establish compelling reasons for sealing his address, which is generally part of the public record when a litigant proceeds pro se. Brimacombe appears to fear that MHH will misuse this information, but MHH has

(and will have) access to this information whether or not it is sealed from the public.  The other concerns expressed in that motion are vague and insufficient to meet the standard for sealing.  The motion is denied.

MHH's motion to compel (Doc. 36) is denied as moot in light of the dismissal of this action.

Brimacombe's motion for sanctions (Doc. 42), requesting that the Court sanction MHH for filing a motion to amend the complaint in the form of monetary sanctions to be paid to Brimacombe, is denied.  The motion is not well founded, and at any rate, the Court, in its discretion, declines to consider sanctions despite frustrating conduct by both sides.

Accordingly,

**IT IS ORDERED** that the motion for leave to amend (Doc. 40) is **denied**.

**IT IS FURTHER ORDERED** that this action is **dismissed without prejudice** for lack of subject-matter jurisdiction.  The Clerk shall enter judgment accordingly and terminate this action.

**IT IS FURTHER ORDERED** that Brimacombe's motion to seal (Doc. 37) and motion for sanctions (Doc. 42) are **denied**.

**IT IS FURTHER ORDERED** that MHH's motion to compel compliance (Doc. 36) is **denied as moot**.

Dated this 24th day of June, 2026.

_____
Dominic W. Lanza
United States District Judge